JANET KIRTON        *       NO. 2021-CA-0035

VERSUS               *

                                COURT OF APPEAL

RAMELLI JANITORIAL       *
SERVICE PAYROLL, L.L.C.,          FOURTH CIRCUIT
RAMELLI WASTE, L.L.C.,       *
RAMELLI HOLDINGS, L.L.C.,       STATE OF LOUISIANA
RAMELLI GROUP, L.L.C.,    * * * * * * *
HILTON RIVERSIDE, L.L.C.,
AND HILTON WORLDWIDE,
INC.

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-05307, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge
Rosemary Ledet)

John Richards
Morris Bart, LLC
601 Poydras Street
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT

Nathan M. Gaudet
Guy Dugue Perrier
PERRIER & LACOSTE, L.L.C.
365 Canal Street, Suite 2550
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

                                **AFFIRMED**
                                **October 13, 2021**

This is a personal injury suit. The plaintiff, Janet Kirton, was struck and pushed to the floor by a maintenance cart pushed by Hugo Alvarado, an employee of defendant, Ramelli Janitorial Service, Inc. ("Ramelli Janitorial"),[1] in a hallway of the Hilton Riverside Hotel. Following a bench trial, the trial court awarded Ms. Kirton damages for some, but not all, of her claimed injuries. From this judgment, Ms. Kirton appeals. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2016, Ms. Kirton and several friends were staying at the Hilton Riverside Hotel while on vacation in New Orleans. Ms. Kirton was returning to her room when she was struck from behind by a maintenance cart pushed by Mr. Alvarado. The impact from the cart caused Ms. Kirton to fall to the ground and sustain injuries.

---

[1] Ms. Kirton initially sued defendants, Ramelli Janitorial Service Payrolls, LLC; Ramelli Waste, LLC; Ramelli Holdings, LLC; Ramelli Group, LLC; Hilton Riverside, LLC; and Hilton Worldwide, Inc. In her first supplemental and amended petition, Ms. Kirton named additional defendants Ramelli Janitorial, Hugo Alvarado, and Hilton Management, LLC. Following the trial, the trial court dismissed all defendants other than Ramelli Janitorial.

In her petitions, Ms. Kirton claimed injuries to her left ankle and left leg. In late 2018, Ms. Kirton produced medical records to the defendants documenting neck, shoulder, and lower back symptoms commencing in June 2017. In June 2018, Ms. Kirton began seeing Dr. Eugene Koh, an orthopedic surgeon, for treatment of these symptoms. In August 2018, Dr. Koh performed a six-level cervical decompression and fusion surgery. Causation of Ms. Kirton's neck symptoms was the principal disputed issue at trial.

At trial, Ms. Kirton testified in person and Dr. Koh's deposition testimony was introduced into evidence.[2] Ms. Kirton testified that the accident caused a laceration to her ankle, which immediately became painful and swollen. By the time she returned home to Maryland, Ms. Kirton's knee had developed a knot and had begun to swell. Ms. Kirton's medical records regarding her knee and ankle injuries were consistent with her testimony.

Ms. Kirton further testified that she began feeling pain in her left shoulder about a month after the accident and this shoulder pain eventually moved into her neck and lower back. Ms. Kirton acknowledged that she had experienced pain in her neck, shoulder, and back before this accident, but the pain was never as severe as the pain she felt after this accident. Ms. Kirton described her neck, shoulder, and back pain after this accident as terrible and constant.

On cross-examination, Ms. Kirton was questioned as to why her medical records—from multiple treatment providers documenting numerous visits—

---

[2] Steven Lenz, a Hilton Riverside employee, and Patricia Whiting, Ms. Kirton's friend, also testified, but their testimony is not relevant to any issues on appeal.

contained no complaints of neck, shoulder, or back pain until eleven months after the accident. She responded that she reported her complaints, but her treatment providers failed to note the complaints in medical records or to treat her reported symptoms.

Defense counsel also cross-examined Ms. Kirton concerning discrepancies between her prior deposition testimony and her medical records. During her deposition, Ms. Kirton denied ever seeing a doctor for shoulder or neck pain before the July 2016 accident. But, at trial, she admitted seeing doctors for shoulder and neck pain in connection with three motor vehicle accidents and resulting lawsuits filed in 2002, 2013, and 2015. Ms. Kirton explained that she misunderstood the question posed to her in the deposition and that she thought the question was whether she had seen an orthopedic doctor for pain similar to the pain she felt after this accident. Ms. Kirton also testified during her deposition that she had experienced no lower back pain for at least one year before this accident. Yet at trial, Ms. Kirton testified that as recently as November 2015, eight months before the accident, she had treated for lower back pain stemming from a 2015 slip and fall accident which led to a lawsuit. Confronted with this discrepancy, Ms. Kirton again testified that she misunderstood defense counsel's question at the deposition and that she thought he asked whether she had experienced lower back pain at any earlier point in the calendar year before the July 2016 accident.

The only expert whose testimony was offered at trial was Dr. Koh, who treated Ms. Kirton's shoulder, back, and neck symptoms[3] and ultimately performed a six-level cervical decompression and fusion surgery. Dr. Koh testified via deposition that this accident caused Ms. Kirton's neck symptoms and necessitated the surgery. Dr. Koh opined that Ms. Kirton was asymptomatic before the accident and became symptomatic after the accident.

Dr. Koh, however, admitted that he did not review the medical records of any healthcare providers who treated Ms. Kirton in the two years between the July 2016 accident and Ms. Kirton's first date of treatment with Dr. Koh. Dr. Koh also testified that Ms. Kirton did not inform him of her history of neck symptoms before the accident, and that he relied on Ms. Kirton's self-reported history in forming his causation opinion.[4]

At the close of the trial, the trial court deferred judgment pending submission of the parties' post-trial memoranda. On July 24, 2020, the trial court issued written reasons for judgment, followed by a judgment signed on July 27, 2020, finding Ramelli Janitorial liable to Ms. Kirton and awarding Ms. Kirton $40,226.31 in past medical damages and $69,000.00 in general damages.[5]

In its written reasons for judgment, the trial court found that Mr. Alvarado was liable for Ms. Kirton's fall and resulting damages, and that Ramelli Janitorial was vicariously liable as Mr. Alvarado's employer. The trial court further found that the July 2016 accident caused Ms. Kirton's ankle and knee injuries.

---

[3] Hereinafter referred to as the "neck symptoms."

[4] Ms. Kirton herself admitted at trial that she did not inform Dr. Koh of any of her symptoms which predated the July 2016 accident.

[5] The trial court also granted defendants' motion for involuntary dismissal of all defendants other than Ramelli Janitorial, finding that Mr. Alvarado had not been served with process and that there was insufficient evidence to find the other defendants liable for Ms. Kirton's injuries. Ms. Kirton did not appeal these dismissals.

Nonetheless, the trial court declined to award any damages arising from Ms. Kirton's neck symptoms. The trial court reasoned that there was insufficient evidence to causally relate these injuries to this accident. In support, the trial court cited the absence of any documented complaints from Ms. Kirton regarding her neck symptoms for eleven months after the accident; Ms. Kirton's extensive history of past injuries to her neck, shoulder, and back; and Ms. Kirton's failure to report this history to Dr. Koh, which rendered Dr. Koh's causation opinion unreliable.

Ramelli Janitorial filed a motion for new trial, or, in the alternative, for remittitur, arguing that the trial court had awarded Ms. Kirton damages for past medical expenses that were related to treatment of her neck symptoms. The trial court denied Ramelli Janitorial's motion for new trial, but it granted in part Ramelli Janitorial's motion for remittitur and reduced its award of past medical expenses from $40,226.31 to $30,119.81. This appeal followed.

**DISCUSSION**

Although Ms. Kirton asserts three assignments of error,[6] the dispositive issue is whether the trial court erred in finding the evidence insufficient to causally relate the July 2016 accident to Ms. Kirton's shoulder, back, and neck injuries. This is a question of fact.

---

[6] Ms. Kirton assigns the following three errors:

1) The trial court erred in failing to find that, more likely than not, the July 1, 2016 incident aggravated Ms. Kirton's cervical spine injuries, causing them to become symptomatic and leading to her need for surgery;

2) The trial court erred in failing to award the past medical specials proven at trial [and attributable to Ms. Kirton's shoulder, back, and neck injuries]; and

3) The trial court abused its discretion in failing to award general damages with respect to Ms. Kirton's neck injuries and surgery.

*I.     Standard of Review*

An appellate court applies the manifest error or clearly wrong standard when reviewing a trial court's factual findings. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). This standard of review requires the appellate court to apply a two-part test: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is clearly wrong (manifestly erroneous). *Greenblatt v. Sewerage & Water Bd. of New Orleans*, 19-0694, p. 3 (La. App. 4 Cir. 12/20/19), 287 So.3d 763, 766 (citing *Wilson v. Veolia Transp. Servs., Inc.*, 15-0998, p. 3 (La. App. 4 Cir. 4/13/16), 192 So.3d 245, 248). In *Wilson*, we observed:

> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

*Wilson*, 15-0998, p. 3, 192 So.3d at 248.

Furthermore, "[when] two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently." *Greenblatt*, 19-0694, p. 4, 287 So.3d at 766-67. "Accordingly, reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed by an appellate court even though it may feel its own evaluations and inferences are more reasonable than the fact finder's." *Id.*

*II.     Sufficiency of Causation Evidence*

Ms. Kirton argues that the trial court's decision was clearly wrong, because Dr. Koh was the only expert to testify at trial. Dr. Koh testified that this accident caused Ms. Kirton's neck symptoms and necessitated surgery. Ramelli Janitorial responds that the trial court was faced with two conflicting views of the evidence and found the evidence insufficient to prove the accident caused Ms. Kirton's neck symptoms due to doubts about Ms. Kirton's credibility and the reliability of Dr. Koh's opinion. Because this view of the evidence was reasonable, Ramelli Janitorial argues, the trial court cannot be manifestly erroneous. We agree.

In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the subsequent injuries. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759. "The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical and lay testimony that it is more probable than not that the injury was caused by the accident." *Levine v. Allstate Ins. Co.*, 17-0896, p. 3 (La. App. 4 Cir. 4/18/18), 243 So.3d 1286, 1288.

Ms. Kirton contends that Dr. Koh's testimony conclusively satisfied her burden of proof on causation. Implicit in her position is Ms. Kirton's argument that the trial court was bound to accept Dr. Koh's opinion in the absence of countervailing expert testimony. Ms. Kirton is incorrect. It is well settled in Louisiana that the trial court is not bound by the testimony of an expert; expert testimony is to be weighed the same as other evidence. *Penton v. Healy*, 04-1470, p. 4 (La. App. 4 Cir. 1/26/05), 894 So.2d 537, 540. A trial court may accept or reject in whole or in part an expert's opinion. *Id*. The effect and weight to be given to expert testimony is within the trial court's broad discretion. *Id*.

7

Defendants elicited testimony from Ms. Kirton that undermined her credibility and rendered Dr. Koh's testimony unreliable. Ms. Kirton admitted at trial that she had an extensive history of injuries similar to the injuries she attributed to this accident. Yet, Ms. Kirton initially denied those prior injuries during her deposition and failed to disclose them to Dr. Koh. Further, the absence of any documented complaint by Ms. Kirton of neck symptoms to the numerous healthcare providers that she visited in the eleven months after the accident undermined her self-reported history of neck symptom complaints soon after the accident. In its written reasons, the trial court cited these credibility issues to support its conclusion that Dr. Koh's causation opinion was unreliable and that the evidence was insufficient to causally relate Ms. Kirton's neck symptoms to the accident.[7]

Viewing the record in its entirety, we find that the trial court's judgment was reasonable. The credibility issues apparent in Ms. Kirton's testimony undermined not only her own testimony, but also the reliability of Dr. Koh's testimony. His causation opinion depended on the accuracy of Ms. Kirton's self-reported medical history. Thus, although Dr. Koh's testimony was uncontroverted by any contradictory testimony, the trial court acted within its broad discretion in rejecting Dr. Koh's expert testimony. Thus, we cannot conclude the trial court was manifestly erroneous in finding Ms. Kirton's neck symptoms were causally related to this accident.

**DECREE**

---

[7] Although appeals are taken from the judgment—not the written reasons for judgment—the appellate court is entitled to review the written reasons for insight into the trial court's judgment. *Brady v. Pirner*, 18-0556, p. 5, n. 4 (La. App. 4 Cir. 12/5/18), 261 So.3d 867, 871.

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**